IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

COLONY INSURANCE )
COMPANY, )
)
    Plaintiff, )
)
v. )
) Case No.:
ST. PAUL FIRE & MARINE )
INSURANCE COMPANY; CANAL )
WOOD LLC; B&B PULPWOOD, )
INC.; DIXIE TIMBER )
HARVESTING CO., INC. f/k/a )
CANOE CREEK TIMBER; EVANS )
TIMBER CO., INC.; RONALD )
DAVIS LOGGING COMPANY, )
INC.; ENTERPRISE TRUCKING, )
INC.; W.C. SMITH PULPWOOD )
CO.; and LANIER TIMBER CO., )
)
    Defendants. )

## PETITION FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Colony Insurance Company ("Colony"), by and

through its undersigned counsel of record, and brings this action against

Defendants St. Paul Fire & Marine Insurance Company, Canal Wood LLC, B&B

Pulpwood, Inc., Dixie Timber Harvesting Co., Inc. f/k/a Canoe Creek Timber,

Evans Timber Co., Inc., Ronald Davis Logging Company, Inc., Enterprise

Trucking, Inc., W.C. Smith Pulpwood Co., and Lanier Timber Co. and alleges as follows:

1.      This is an action for Declaratory Judgment pursuant to 28 USC §2201 for the purpose of determining the actual controversy between Plaintiff and Defendants as set forth herein.

## PARTIES

2.      Colony is a foreign corporation with its principal place of business in Richmond, Virginia and is thus a citizen of Virginia.

3.      St. Paul Fire & Marine Insurance Company ("St. Paul") is a Minnesota corporation with its principal place of business in Minnesota.

4.      Canal Wood LLC, is a Delaware corporation headquartered in Lumberton, North Carolina.  Canal Wood LLC also operated under the name of Canal Wood Corp (collectively referred to herein as "Canal Wood").

5.      B&B Pulpwood Inc. ("B&B") is a Georgia corporation with its principal place of business located in Macon, Georgia and is thus a Georgia citizen.

6.      Dixie Timber Harvesting Co., Inc. ("Dixie Timber") is an Alabama corporation with its principal place of business in Attalla, Alabama.  Dixie Timber

formerly operated under the name of Canoe Creek Timber ("Canoe Creek") (collectively "Dixie Timber").

7. Evans Timber Co., Inc. ("Evans Timber") is a Georgia corporation with its principal place of business in Milner, Georgia.

8. Ronald Davis Logging Company, Inc. ("RD") is a Georgia corporation with its principal place of business in Forsyth, Georgia.

9. Enterprise Trucking Inc. ("Enterprise") is a Georgia corporation with its principal place of business in Carlton, Georgia.

10. W.C. Smith Pulpwood Co. ("WC Smith") is a Georgia company with its principal place of business in Commerce, Georgia.

11. Lanier Timber Co. ("Lanier") is a Georgia corporation with its principal place of business in Seneca, South Carolina.

12. TIN, Inc. d/b/a Temple Inland and Inland Paperboard and Packaging, Inc. d/b/a Temple-Inland Forest (collectively "Temple Inland") are Delaware corporations with their principal place of business located in Diboll, Texas. Temple Inland operates a paper mill in Floyd County, Georgia.

## JURISDICTION

13.     The Court has jurisdiction over this action pursuant to 28 United States Code Section 1332 because Plaintiff is a citizen of a different state than all Defendants, and the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000).

14.     The Court further has jurisdiction pursuant to 28 U. S.C. § 2201, in that Colony is seeking a declaration from this Court regarding the parties' rights and obligations with respect to a policy of commercial general liability ("CGL") Colony issued to B&B, Policy No. GL3181573 (the "Policy"), with effective dates of coverage from February 12, 2004 to February 12, 2005. (A copy of the Policy is attached hereto as Exhibit "A.")  The Court is vested, pursuant to 28 U.S.C. § 2201, with the power to declare the rights and obligations of the parties hereto, and to provide such other relief as may be necessary.

## VENUE

15.     Venue is laid in this District pursuant to 28 U.S.C. § 1391 by virtue of the fact that this action seeks the interpretation of a CGL policy of insurance issued in the State of Georgia to named insured B&B, a Georgia citizen.   The Policy Declarations state that the mailing address of insured was P.O. Box 32, Roberta,

Georgia 31078, and the Policy was delivered to B&B at its address in Roberta, Georgia.

16.   Defendant St. Paul filed the underlying lawsuit, styled *St. Paul Fire St. Paul Fire & Marine Insurance Company v. Canal Wood LLC, B&B Pulpwood, Inc., Dixie Timber Harvesting Co., Inc. f/k/a Canoe Creek Timber, Evans Timber Co., Inc., Ronald Davis Logging Company, Inc., Enterprise Trucking, Inc., W.C. Smith Pulpwood Co., and Lanier Timber Co.*, Case No.: 4:10-CV-33-RLV, in the United States District Court for the Northern District of Georgia, Rome Division ("Underlying Lawsuit"). (A true and accurate copy of the Complaint and the First Amended Complaint in the Underlying Lawsuit is attached hereto as Exhibits "B." and "C." respectively.)

## PRELIMINARY ALLEGATIONS

### The Subject Incident

17.   B&B is a wholesale timber broker located in Macon, Georgia. (Complaint, ¶ 3; Attached as Exhibit "B.") Temple Inland operates a paper mill in Floyd County, Georgia.   (Complaint, ¶ 5.)   Based on facts alleged in the Underlying Lawsuit, various Defendants entered into Wood Fiber Vendor Agreements with Temple Inland where Defendants agreed to act as brokers for and

provide services to Temple Inland (These agreements are referred to herein as "Vendor Agreements"). (First Amended Complaint, ¶ 14; Attached as Exhibit "C".)

18.    At all relevant times, Temple Inland allegedly contracted to purchase timber from various vendors, including B&B. (First Amended Complaint, ¶ 15, 30.) B&B, and other vendors, delivered timber to Temple Inland's mill in Georgia. (See First Amended Complaint, ¶ 15.) Upon delivery, Temple Inland's computer system verified the vendor's contract, identified and weighed the timber and credited the vendor's account. (First Amended Complaint, ¶ 15.) Temple Inland thereafter issued payment to the vendor via wire transfer or check. (First Amended Complaint, ¶ 15.)

19.    Upon entering into a Vendor Agreement, Temple Inland allegedly issued a Contract Card to the vendor. (First Amended Complaint, ¶ 16.) The Contract Card contained a bar code embedded with certain unique identifiers (i.e., the name of the vendor to which it was assigned and the vendor's contract number). (First Amended Complaint, ¶ 16.)

20.    When an in-bound vendor arrived at Temple Inland's mill, he stopped his truck on an electronic scale. (First Amended Complaint, ¶ 17.) The vendor

thereafter swiped a Contract Card in Temple Inland's computer system, which recorded the vendor's identifier information (i.e. the name of the broker, the broker's contract number).  (First Amended Complaint, ¶ 17.)  Temple Inland's weighing system thereafter weighed the truck and its load, and recorded the gross weight.  (First Amended Complaint, ¶ 17.)  Temple Inland would thereafter unload the truck, weigh the empty truck and record the "tare weight" (i.e. the weight of the empty truck).  (First Amended Complaint, ¶ 17.)

21.    By swiping the Contract Card in Temple Inland's system, the vendor represented to Temple Inland that it was delivering timber pursuant to a Vendor Agreement, and each delivery was a separate and distinct contract between Temple Inland and the vendor for the sale of timber ("Timber Contracts").  (First Amended Complaint, ¶ 18.)

22.    After calculating the weight of the timber delivery, Temple Inland's computer system electronically transmitted the data to Temple Inland's data processing center, and printed a paper "scale ticket" (which memorialized the material terms of the Timber Contract and represented the vendor's proof of delivery).  (First Amended Complaint, ¶ 19.)

23. According to the facts in the alleged underlying lawsuit, an employee of Temple Inland, in conspiracy with agents for Defendants, including B&B, manipulated Temple Inland's delivery system and fraudulently misrepresented to Temple Inland deliveries of timber. (First Amended Complaint, ¶ 20.) Temple Inland was allegedly defrauded out of more than $4 million dollars as a result of the scheme in which Defendants, such as B&B, falsely misrepresented their deliveries and induced Temple Inland to pay for timber the Defendants, such as B&B, did not deliver. (First Amended Complaint, ¶ 20.)

24. At all relevant times Temple Inland allegedly assigned and entrusted Contract Cards to Defendants such as B&B. (First Amended Complaint, ¶ 21.) According to the facts alleged in the underlying lawsuit, Defendants, including B&B, swiped their respective cards in Temple Inland's computer system, thereby representing that they were delivering timber to Temple Inland pursuant to a valid "Vendor Agreement" and creating a Timber Contract. (First Amended Complaint, ¶ 21.) Within seconds of that transaction, the Contract Card was allegedly re-swiped representing another delivery of timber to Temple Inland and creating a new Timber Contract. (First Amended Complaint, ¶ 22.)

25.     Although this alleged scheme resulted in two Timber Contracts with Temple Inland, Defendants, such as B&B, allegedly only delivered one delivery of timber, and did not fulfill the second Timber Contract.  (First Amended Complaint, ¶ 22.)  By swiping the Contract Card twice, Defendants, such as B&B, allegedly misrepresented their delivery causing Temple Inland to believe two deliveries were made when only one delivery was actually made.  (First Amended Complaint, ¶ 22.)  This alleged misrepresentation induced Temple Inland to pay Defendants, such as B&B, for timber they allegedly did not deliver.  (First Amended Complaint, ¶ 22.)

26.     On or about August 26, 2004, B&B entered into a vendor agreement with Temple Inland for a period of one year ("B&B Agreement"). (First Amended Complaint, ¶ 30.)   Upon entering into the B&B Agreement, Temple Inland provided Contract Cards to B&B ("B&B Contract Cards"). (First Amended Complaint, ¶ 30.)

27.     According to the facts alleged in the underlying lawsuit, B&B, through its agents, induced Temple Inland to pay for timber it did not deliver by knowingly misrepresenting its deliveries to Temple Inland.   (First Amended Complaint, ¶ 33.)  These alleged misrepresented deliveries caused Temple Inland

-9-

to record fictitious transactions, creating Timber Contracts B&B allegedly did not fulfill and induced Temple Inland to issue payments to B&B for alleged non-existent timber deliveries.  (First Amended Complaint, ¶ 33.)

28.  B&B, through its agents, allegedly swiped B&B Vendor Cards representing B&B was delivering timber pursuant to the B&B Agreement and creating a Timber Contract with Temple Inland.  (First Amended Complaint, ¶ 34.) Within seconds of swiping their card, B&B, through its agents, allegedly re-swiped the same contract card representing B&B was making a second delivery of timber to Temple Inland pursuant to the B&B Agreement and creating a separate and additional Timber Contract with Temple Inland.  (First Amended Complaint, ¶ 34.)

29.  The second transaction allegedly represented a fictitious transaction designed to mislead and cause Temple Inland to issue payment for timber B&B did not provide.  (First Amended Complaint, ¶ 35.)  Based on B&B's alleged misrepresentation, Temple Inland issued payment to B&B for timber B&B allegedly did not provide.  (First Amended Complaint, ¶ 35.)  B&B's alleged failure to deliver the timber pursuant to terms of the Timber Contract was an alleged material breach thereof and caused Temple Inland a substantial loss.  (First Amended Complaint, ¶ 35.)

30.    As a result of this alleged scheme, B&B (between September 2004 and continuing until at least June 2005) allegedly received $84,272.64 for timber and/or wood fiber Temple Inland allegedly never received.  (First Amended Complaint, ¶ 36.)  B&B was advised of the alleged fraud and has not disgorged payments received as a result thereof.  (First Amended Complaint, ¶ 36.)

### The Underlying Lawsuit

31.    As set forth above, St. Paul filed the Underlying Lawsuit against B&B and other Defendants.

32.    In the Complaint and First Amended Complaint, St. Paul asserted a cause of action for breach of contract against B&B by stating B&B breached the B&B Agreement by failing to provide the contracted-for broker services.  (First Amended Complaint, ¶ 95.)  St. Paul alleged breach of contract by stating B&B breached the B&B Timber Contracts by failing to deliver the timber it agreed to provide and for which Temple Inland paid.  (First Amended Complaint, ¶ 106.)

33.    St. Paul asserted a cause of action for fraud against B&B because B&B allegedly committed fraud by knowingly and falsely representing to Temple Inland that B&B had, in connection with the B&B Breached Timber Contracts, delivered wood to Temple Inland and failed to disclose that it had no intention of

delivering that timber. (First Amended Complaint, ¶ 117.) St. Paul alleged that B&B made the misrepresentation and failed to disclose material facts with the intent to deceive Temple Inland and induce Temple Inland to pay B&B for timber B&B had not delivered and did not intend to deliver. (First Amended Complaint, ¶ 117.) St. Paul further alleged that Temple Inland relied on B&B's alleged misrepresentations and omissions resulting in B&B receiving a monetary benefit of $84,272.64 in payment for timber B&B did not deliver and Temple Inland did not receive. (First Amended Complaint, ¶ 117.)

34.    St. Paul also asserted a cause of action for unjust enrichment against B&B because B&B allegedly received payment for timber B&B did not deliver to Temple Inland and B&B knew it had received payment for timber it did not deliver. (First Amended Complaint, ¶ 132.)

35.    St. Paul asserted a cause of action for "Money Had and Received" against B&B because B&B allegedly did not legitimately earn those payments and was not entitled to those payments, as B&B did not comply with and perform its obligations under the B&B Breached Timber Contracts. (First Amended Complaint, ¶ 142.)

36.     St. Paul finally asserted a cause of action for negligence alleging that B&B's conduct constituted a breach of ordinary care, and proximately caused damage to Temple Inland.  (First Amended Complaint, ¶ 151.)

**The Policy**

37.     Colony issued to B&B a Commercial General Liability Policy for the policy period of February 12, 2004 to February 12, 2005 (Policy No. GL3181573).

38.     The Policy states, in pertinent part:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

> **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

. . . .

> **b.**     This insurance applies to "bodily injury" and "property damage" only if:

-13-

(1)    the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period;

(3)    Prior to the policy period, no insured . . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, than any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(4)    **[As added by Limitation of Coverage to Business Description, Form U159-0702]** The bodily injury" or "property damage is caused by or results from the [insured's] business described [as "Timber Cruiser"] in the Schedule.

. . . .

d.    "Bodily" injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **11** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an occurrence or claim:

. . . .

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

-14-

. . . .

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected or Intended Injury**

"Bodily injury" or "property damage" that is expected or intended from the standpoint of the insured

**b.     Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

. . . .

## COVERAGE B - PERSONAL AND ADVERTISING INJURY

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

. . . .

**2.     Exclusions**

This insurance does not apply to:

-15-

**a.     Knowing Violation Of Rights Of Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

. . . .

**e.     Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f.     Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract.

. . . .

## SECTION V - DEFINITIONS

. . . .

**3.**   "Bodily injury"  means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time;

. . . .

**13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

-16-

14.   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**     False arrest, detention, or imprisonment;

    **b.**     Malicious prosecution;

    **c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**     The use of another's advertising idea in your "advertisement"; or

    **g.**     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

. . . .

**17.**   **"Property damage" means:**

    **a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

-17-

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

**18.**    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

## COUNT I

### There Was No "Bodily Injury" or "Property Damage"

39.    Colony incorporates Paragraphs 1 through 38, as though set forth in full herein.

40.    Section I Coverage A provides coverage for "Bodily Injury" and "Property Damage."

41.    The Policy defines "Bodily Injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The Policy defines "Property Damage" as "(a) physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the physical injury that caused it."

-18-

42.    Defendant St. Paul seeks to recover damages against Defendant B&B for breach of contract, fraud, unjust enrichment, and "money had and received."

43.    Nowhere in the Complaint does St. Paul allege that the damages it is claiming were the result of "bodily injury" or "property damage" as these terms are defined in the Policy.

44.    Therefore, no coverage exists under Section I Coverage A because there was no "Bodily Injury" or "Property Damage."

45.    An actual controversy exists in that Colony contends that pursuant to the terms of the subject Policy, Colony has no duty to defend B&B in the Underlying Lawsuit or to indemnify B&B for any damages resulting therefrom.

46.    Under 28 U.S.C. §2201, Colony, accordingly, seeks a judicial declaration of the parties' respective rights and duties under the Policy.

## COUNT II

### There Was No "Personal and Advertising Injury"

47.    Colony incorporates Paragraphs 1 through 46 as though set forth in full herein.

48.    Section I Coverage B provides coverage for "Personal and Advertising Injury."

-19-

49.    The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

a.    False arrest, detention, or imprisonment;

b.    Malicious prosecution;

c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.    The use of another's advertising idea in your 'advertisement'; or

g.    Infringing upon another's copyright, trade dress or slogan in your 'advertisement'."

50.    Defendant St. Paul seeks to recover damages against Defendant B&B for breach of contract, fraud, unjust enrichment, "money had and received.

51. Breach of contract, Fraud, unjust enrichment, "money had and received," and negligence are not within the list of certain offenses which constitute "personal and advertising injury" under Colony's Policy.

52. An actual controversy exists in that Colony contends that pursuant to the terms of the subject Policy, Colony has no duty to defend B&B in the Underlying Lawsuit or to indemnify B&B for any damages resulting therefrom.

53. Under 28 U.S.C. §2201, Colony, accordingly, seeks a judicial declaration of the parties' respective rights and duties under the Policy.

## COUNT III

### There Was No "Occurrence" Sufficient to Trigger Coverage Under Colony's Policy

54. Colony incorporates Paragraphs 1 through 55, as though set forth in full herein.

55. Colony's policy covers "bodily injury," "property damage," and "personal and advertising injury" caused by an "occurrence." The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

56. St. Paul is not contending that B&B accidentally breached its contract with B&B or that it accidentally defrauded Temple Inland. On the contrary, St.

Paul expressly alleges B&B "knew" that it had falsely represented to Temple

Inland that it had delivered wood to Temple and had failed to disclose that it had

no intention of delivering that timber. (First Amended Complaint, ¶ 117.) St. Paul

further alleged that B&B acted with the intent to deceive Temple Inland and induce

Temple Inland to pay B&B for timber B&B had not delivered and did not intend to

deliver. (First Amended Complaint, ¶ 117.)

57.    Because St. Paul's alleges that B&B intentionally deceived and

induced Temple Inland, B&B's conduct cannot be considered "accidental," and

there is not any "occurrence" sufficient to trigger coverage under Colony's Policy.

58.    An actual controversy exists in that Colony contends that pursuant to

the terms of the subject Policy, Colony has no duty to defend B&B in the

Underlying Lawsuit or to indemnify B&B for any damages resulting therefrom.

59.    Under 28 U.S.C. § 2201, Colony, accordingly, seeks a judicial

declaration of the parties' respective rights and duties under the Policy.

## COUNT IV

### Expected or Intended Injury Exclusion

60.    Colony incorporates Paragraphs 1 through 59, as though set forth in

full herein.

-22-

61.    Pursuant to the plain language of the Policy concerning Coverage A, Exclusion (a) entitled "Expected or Intended Injury," Colony unambiguously excludes coverage for "'bodily injury' or 'property damage' that is expected or intended from the standpoint of the insured."

62.    St. Paul expressly alleges B&B "knew" that it had falsely represented to Temple Inland that it had delivered wood to Temple and had failed to disclose that it had no intention of delivering that timber.  (First Amended Complaint, ¶ 117.)  St. Paul further alleged that B&B acted with the intent to deceive Temple Inland and induce Temple Inland to pay B&B for timber B&B had not delivered and did not intend to deliver.  (First Amended Complaint, ¶ 117.)

63.    Thus, Colony contends that even if St. Paul alleged damages arising from "bodily injury" or "property damage," which Colony vehemently denies, Coverage A, Exclusion (a) would preclude coverage for such damages if they arose from intentional conduct on the part of B&B.

64.    An actual controversy exists in that Colony contends that pursuant to the terms of the subject Policy, Colony has no duty to defend B&B against the Underlying Lawsuit or to indemnify B&B for any damages therefrom.

65.     Defendants collectively contend that B&B is entitled to coverage under the Policy.

66.     Under 28 U.S.C. §2201, Colony, accordingly, seeks a judicial declaration of the parties' respective rights and duties under the Policy.

## COUNT V

### "Knowing Violation" Exclusion

67.     Colony incorporates Paragraphs 1 through 66, as though set forth in full herein.

68.     Pursuant to the plain language of the Policy concerning Coverage B, Exclusion (a) entitled "Knowing Violation Of Rights Of Another," Colony unambiguously excludes coverage for "'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

69.     St.   Paul expressly alleges that B&B "knew" that it had falsely represented to Temple Inland that it had delivered wood to Temple and had failed to disclose that it had no intention of delivering that timber.   (First Amended Complaint, ¶ 117.)   St. Paul further alleged that B&B acted with the intent to

-24-

deceive Temple Inland and induce Temple Inland to pay B&B for timber B&B had

not delivered and did not intend to deliver.  (First Amended Complaint, ¶ 117.)

70.     Thus, Colony contends that even if St. Paul alleged damages arising

from "personal and advertising injury," which Colony vehemently denies,

Coverage B, Exclusion (a) would preclude coverage for such damages if they arose

from intentional conduct on the part of B&B.

71.     An actual controversy exists in that Colony contends that pursuant to

the terms of the subject Policy, Colony has no duty to defend B&B in the

Underlying Lawsuit or to indemnify B&B for any damages resulting therefrom.

72.     Under 28 U.S.C. §2201, Colony, accordingly, seeks a judicial

declaration of the parties' respective rights and duties under the Policy.

## COUNT VI

### Coverage A, Exclusion (b) and Coverage B, Exclusions (e)

### and (f): Contractual Liability

73.     Colony incorporates Paragraphs 1 through 72, as though set forth in

full herein.

74.     Coverage A, Exclusion (b) excludes coverage for "'bodily injury' or

'property damage' for which the insured is obligated to pay damages by reason of

the assumption of liability in a contract or agreement." Similarly, Coverage B,

Exclusions (e) and (f) exclude coverage for "'[p]ersonal and advertising injury' for

which the insured has assumed liability in a contract or agreement," and for

"'[p]ersonal and advertising injury' arising out of a breach of contract."

75.    St. Paul contends that the damages in this case arise from B&B's

breach of its contract with Temple to deliver wood fiber for which Temple had

paid.  (First Amended Complaint, ¶ 30, 106.)  In the absence of this contract,

however, B&B would have no duty to deliver wood fiber to Temple and thus no

liability for any alleged breach of such duty.  Accordingly, even assuming St.

Paul's Complaint alleged damages arising for "bodily injury," "property damage,"

or "personal and advertising injury," which Colony vehemently denies, the breach

of contract claim falls squarely within Coverage A, Exclusion (b) and Coverage B,

Exclusions (e) and (f).

76.    Thus, Colony contends that Coverage A, Exclusion (b) and Coverage

B, Exclusions (e) and (f) exclude coverage for the breach of contract claim.

### RELIEF REQUESTED

WHEREFORE, Colony respectfully requests that the Court enter judgment

declaring the rights and obligations of the parties as follows:

(a)   That St. Paul's claims against B&B contained in the Underlying Lawsuit are excluded from coverage pursuant to the Policy issued to B&B;

(b)   That Colony has no duty to provide coverage, indemnity or a defense B&B for all, or any portion of, the claims arising from the Underlying Lawsuit;

(c)   Trial by jury; and

(d)   For such other and further relief as the Court may deem proper, together with costs, attorneys' fees and disbursements of this action.

Respectfully submitted, this 9th day of August, 2010.

CARLOCK, COPELAND & STAIR, LLP

By: _____
    FRED M. VALZ, III
    Georgia State Bar No. 723379
    Email: fvalz@carlockcopeland.com
    *Attorney for Colony Insurance Company*

2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia 30303
404-522-8220 (Telephone)
404-523-2345 (Fax)
..........
P.O. Box 56887
Atlanta, Georgia  30343

3040622v.1